Name   LESTER L. HOLLEY, SR.

Street Address   P.O. BOX 1694

City and County   TULARE

State and Zip Code   CALIFORNIA 93274

Telephone Number   (559) 331-9718



**FILED**

AUG 05 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
              DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

LESTER L. HOLLEY, SR.

_____

_____

*(Write the full name of each plaintiff who is filing
this complaint. If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

-against-

DEL MONTE FOODS, INC., PLANT
NO. 24; IRENE GALLEGOS; BJ
GREWAL; DOES 1 TO 50

*(Write the full name of each defendant who is
being sued. If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

**Complaint for Employment
Discrimination**

Case No. 1: 1 6 CV   0 1 1 4 9 DAD MJS

*(to be filled in by the Clerk's Office)*

Jury Trial:   ☒ Yes   ☐ No
              *(check one)*

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | LESTER L. HOLLEY, SR. |
| Street Address | 960 W. MADALYN AVE |
| City and County | TULARE |
| State and Zip Code | CALIFORNIA 93275 |
| Telephone Number | (559) 331-9718 |
| E-mail Address | HOLLEYRONNIE 10@YAHOO.COM |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | SEE ATTACHED COMPLAINT |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | SEE ATTACHED COMPLAINT |
| Job or Title (if known) | |
| Street Address | |
| City and County | |

2

State and Zip Code _____

Telephone Number _____

E-mail Address _____
(if known)

Defendant No. 3

Name        SEE ATTACHED COMPLAINT

Job or Title _____
(if known)

Street Address _____

City and County _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____
(if known)

Defendant No. 4

Name        SEE ATTACHED COMPLAINT

Job or Title _____
(if known)

Street Address _____

City and County _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____
(if known)

C.    **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

Name        SEE ATTACHED COMPLAINT

Street Address _____

City and County _____

State and Zip Code _____

Telephone Number _____

3

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒    Other federal law *(specify the federal law)*:
SEE ATTACHED COMPLAINT

☒    Relevant state law *(specify, if known)*:
SEE ATTACHED COMPLAINT

☐    Relevant city or county law *(specify, if known)*:


## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

4

A. The discriminatory conduct of which I complain in this action includes (check all that apply):

    ☐    Failure to hire me.

    ☐    Termination of my employment.

    ☐    Failure to promote me.

    ☒    Failure to accommodate my disability.

    ☒    Unequal terms and conditions of my employment.

    ☒    Retaliation.

    ☒    Other acts (specify): SEE ATTACHED COMPLAINT

(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

SEE ATTACHED COMPLAINT

C. I believe that defendant(s) (check one):

    ☒    is/are still committing these acts against me.

    ☐    is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my (check all that apply and explain):

    ☒    race SEE ATTACHED COMPLAINT

    ☐    color

    ☐    gender/sex

    ☐    religion

    ☐    national origin

    ☐    age. My year of birth is _____. (Give your year of birth only if you are asserting a claim of age discrimination.)

    ☒    disability or perceived disability (specify disability)

SEE ATTACHED COMPLAINT

E. The facts of my case are as follows. Attach additional pages if needed.

_____SEE ATTACHED COMPLAINT_____

_____

_____

_____

_____

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

_____SEE ATTACHED COMPLAINT_____

B.   The Equal Employment Opportunity Commission *(check one)*:

☐   has not issued a Notice of Right to Sue letter.

☒   issued a Notice of Right to Sue letter, which I received on *(date)*
_____SEE ATTACHED COMPLAINT_____ .
*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐   60 days or more have elapsed.

☐   less than 60 days have elapsed.

## V.      Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

SEE ATTACHED COMPLAINT

## VI.      Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 8/4 , 20 16

Signature of Plaintiff _____

Printed Name of Plaintiff   LESTER L. HOLLEY, SR.

Lester L. Holley, Sr.
P.O. Box 1694
Tulare, California 93275

**Pro Se Litigant**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESTER L. HOLLEY, SR., | No. |
| Plaintiff, | **AMERICANS WITH DISABILITY ACT OF 1990 COMPLAINT** |
| vs. | |
| DEL MONTE FOODS, INC., PLANT No. 24; IRENE GALLEGOS; BJ GREWAL; Does 1 to 50, | **[DEMAND FOR TRIAL]** |
| Defendant(s). | |

I.

**SHORT AND CONSCISE STATEMENT**

This is an OFFICIAL CAPACITY action against DEL MONTE FOODS, INC., PLANT NO. 24, its agents, employees, shareholders, board members, assigns and successors ("DEFENDANTS") for unlawful employment practices and retaliation on the basis of disability as well as an OFFICIAL and INDIVIDUAL CAPACITY pendant state claim action for intentional infliction of emotional distress under state law. JURISDICTION AND VENUE.

Finally, LESTER lost a limb at DEFENDANTS' facility in a prior safety hazard situation. Therefore, DEFENDANTS had prior knowledge that LESTER suffered continual emotional distress when

1

it came to questionable safety practices. Despite this fact, DEFENDANTS intentionally refused to accommodate LESTER L. HOLLEY, SR. ("PLAINTIFF")'s disability, in violation of PLAINTIFF's federal and state protected rights. As such, jurisdiction of this Court is invoked pursuant to 28 U.S.C.A., Section(s) 1331 and 1343. This action is authorized and instituted pursuant to Section 107(a) of the **ADA**, 42 U.S.C.A., Section 12117(a), which incorporates by reference Sections 706(f) (1) and (3) of Title VII of the Civil Rights Act of 1964 ("TITLE VII"), 42 U.S.C.A. Section 2000e-5(f) (1) and (3), pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C.A., Section 1981a.

**II.**

**COMMON ALLEGATIONS TO ALL CAUSES OF ACTION**

1). PLAINTIFF, LESTER L. HOLLEY, SR. (hereinafter "LESTER") is a Citizen of the United States of America, and at all times relevant to this action and herein mentioned was, a natural person and a resident of Tulare County, California, with a Post Office Box address of 1694, Tulare, California 93275. LESTER was and has been employed at DEL MONTE FOODS, INC., PLANT NO. 24, since on or about April 7, 1978 through and until present.

2). LESTER is diagnosed with a mental disability that is apportioned to a prior injury within DEFENDANTS facility, and apportioned as caused by the acts and omissions of DEL MONTE supervisory staff, BJ GREWAL, whereby DEL MONTE FOODS, INC., PLANT #24 failed and refused to correct BJ GREWAL's and supervisory staffs' continuous and unlawful conduct, thereby subjecting LESTER to unlawful discrimination and retaliation. DEL

2

MONTE promoted an unsafe, discriminatory, harassing and hostile work environment. Such conduct proximately caused LESTER to suffer continuous and ongoing bouts of emotional distress, depression, high blood pressure, sudden and disabling nervousness, Panic Disorder without Agoraphobia, adverse-psychological imaginings, and sleep abnormalities. These limitations substantially limit LESTER's ability to engage in the major life activity of working without reasonable accommodation. As a result, LESTER is a qualified individual with a disability within the meaning of the Americans with Disabilities Act.

3). Defendant, DEL MONTE FOODS, INC., PLANT NO. 24 (hereinafter "DEL MONTE") is, and at all times relevant to this action and herein mentioned was, a Corporation doing business in the State of California, located at 10652 Jackson Avenue, Hanford, California 93230.

4). At all times relevant, DEL MONTE has continuously been engaged in an industry affecting commerce within the meaning of Section 101(5) of the **ADA**, 42 U.S.C.A., Section 12111(5), and Section 107(7) of the **ADA**, 42 U.S.C.A. Section 12117(a), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C.A., Section 2000e (g) and (h).

5). DEL MONTE has and continuously had and does now have at least more than 501 employees.

6). DEL MONTE is an employer within the meaning of the Americans with Disabilities Act.

7). Defendant, IRENE GALLEGOS, (hereinafter "IRENE") is, and at all times relevant to this action and herein mentioned was, a natural person and Human Resource Executive Manager for DEL

3

MONTE, located at 10652 Jackson Avenue, Hanford, California 93230. IRENE is charged with policy, decision-making authority for DEL MONTE. As such, IRENE ratifying, acquiescing, tacitly authorizing, and apparently consenting to BJ GREWAL's acts and omissions, binds DEL MONTE for such conduct due for the willful and malicious failure and refusal to reasonably accommodate LESTER's disability.

8). Defendant, BJ GREWAL, (hereinafter "BJ") is, and at all times relevant to this action and herein mentioned was, a natural person and LESTER's direct Supervisor at DEL MONTE, located at 10652 Jackson Avenue, Hanford, California 93230.

9). Plaintiff LESTER is informed and believes, and on the basis of that information contends, believes, and alleges, that at all times mentioned in this complaint and herein mentioned Defendant(s) IRENE and BJ were the agents and/or employees of DEL MONTE, and in doing the things alleged in this complaint, were acting within the course and scope of that agency and/or employment.

10). LESTER is ignorant of the true names and capacities of defendants sued as Does 1 through 50, inclusive, and therefore sues these defendants by these fictitious names. LESTER will amend this complaint to allege their true names and capacities when they have been ascertained. LESTER is informed and believes and thereon alleges that each of the fictitiously named defendants is in breach of some contract or is tortiously or otherwise legally responsible in some manner for the occurrences alleged in this complaint and for LESTER's damages.

4

## III.

### PROCEDURAL REQUIREMENTS

11). On or about May 11, 2016, LESTER filed a charge of discrimination, harassment and retaliation (hereinafter the "Charge") with the Equal Employment Opportunity Commission ("EEOC") at 2300 Tulare Street, Suite 215, Fresno, California 93271. On May 16, 2016, the EEOC received LESTER's Charge. The Charge was filed within three hundred (300) days after the occurrence of one or more of the alleged unlawful employment practices in violation of 42 U.S.C.A., Section 12117(a).

12). On May 26, 2016, the EEOC issued LESTER a Notice of Right to Sue Letter stating that LESTER could file an action under the **ADA**. LESTER filed the **complaint** in this case within 90 days after the date on which he received the Notice of Right to Sue, of which LESTER had an effective deadline date, based on issuance of the above Notice, of **August 24, 2016.**

13). Consequently, all jurisdictional prerequisites to the institution of this lawsuit have been fulfilled, and LESTER has exhausted his administrative remedies as required by law.

## IV.

### STATEMENT OF FACTS

14). LESTER commenced employment at DEL MONTE in 1978, hired as a Loader. In 1990, LESTER lost a limb at DEL MONTE due to defective and hazardous equipment. As a result of that injury, LESTER became extremely sensitive to having to work under any unsafe conditions. Despite LESTER's fear of unsafe and hazardous work conditions, throughout the years of his employment LESTER

was promoted in "Brackets" and "Seniority" with a current job description of Forklift Driver. Thus, during his long-standing career as a Forklift Driver in the Shipping Department, in the month and year of July 2014, LESTER filed a complaint with DEL MONTE contending that supervisory staff were ratifying unlawful spine treatments and massages in his work area, performed by a non-licensed pseudo-chiropractor and therefore DEL MONTE was authorizing a continuous safety hazard in LESTER's work area proximately resulting in LESTER's increased work load and emotional distress.

15). Thus, due for supervisory staff providing for "slacking" in LESTER's work area for those who participated in the unlawful spine treatments and massages instead of performing assigned job task, LESTER's supervisors tacitly communicated through their direct acts and omissions towards LESTER that he was expected to "take up the slack" if he wished to keep his job. Hence, LESTER contends that because such expectations were imposed upon him, and not imposed upon other similarly situated employees, such treatment constitutes favoritism and disparate-treatment.

16). LESTER's contention is that Company supervisors provided for spine treatments and unlawful massages to be conducted by an employee known as "magic fingers", on Company time in LESTER's work area. The employees participating in the described conduct would cease and desist in doing their assigned job task and lay on pallets, all around LESTER's Forklift which most of those pallets were charged to LESTER's work load for the day, and receive spine treatments and massages from magic fingers

6

that would last extended periods of time throughout the duration of the work day.

17). LESTER articulated within his complaint to DEL MONTE how the above-described conduct adversely impacted him as well as emotionally distressed him whereas due for LESTER's refusal to acquiesce the unlawful and unsafe practices, LESTER was subjected to manifest disparate-treatment by supervisory staff which perpetuated a custom, policy, pattern, practice--an aegis of hostility, racial oppression and malice directed towards LESTER which bridged DEL MONTE senior and junior officials' collaborative efforts to harm him.

18). Further articulated within the complaint to DEL MONTE as fact was that a supervisory staff named Joe Ramos implemented unlawful racial practices against LESTER wherein Joe Ramos, inciting other Hispanic employees through communicable means, would purposely encourage the speaking of the Spanish language whenever LESTER would approach. And based off the individual demeanors, mildly-aggressive posturing as well as their selection in speech using offensive Spanish words towards LESTER, LESTER being an African-American and endowed with common sense clearly was left with the impression, as a result of their expressed, racist, language, that these persons were showing racial contempt for him. LESTER, articulated these occurrences to DEL MONTE, detailing his verbal request that Joe Ramos and the other Hispanic employees be ordered to cease carrying out racial and hostile conduct towards him. Emotionally vexed, LESTER explained that his health required DEL MONTE to order that such continuing practices be halted. LESTER's request constituted a reasonable

7

accommodation request under the **ADA** provisions. However, DEL MONTE failed and refused to address the conduct, and thereby provided for the miscreant conduct to continue in violation of Title VII of the Civil Rights Act of 1964.

19). LESTER reported the "body" of the above-described conduct to Supervisory Staff, which included BJ. LESTER then reported the events to IRENE stating to IRENE that Joe Ramos, BJ, Kevin Catwell and Phil McNabb done nothing about the complained about occurrences and was providing for the opprobrious conduct to continue.

20). As a result of filing the **ADA** complaint, on August 10, 2014, BJ summoned LESTER to his office. When LESTER entered BJ's office, BJ, with the expression of antagonism and hostility in his voice, spewed to LESTER that an employee named Ed Miller filed a complaint with BJ against LESTER. Thus, after back and forth dialogue, BJ stated to LESTER that *"regarding your complaint against me, if magic fingers was in here I would get a massage from him right now!"* BJ then stated to LESTER that LESTER is being "written-up". BJ went on to direct LESTER to "get out of [his] office". Hence, based on BJ's verbalizations and dialogue to LESTER that day and his statement that *"regarding your complaint against me, if magic fingers was in here I would get a massage from him right now!"* Coupled with the fact that BJ went as far as threatening to fabricate a false adverse-complaint against LESTER, LESTER clearly believed the interaction between him and BJ was in furtherance of BJ's disparate-treatment of LESTER and BJ's attempt to protect Joe Ramos, for no other reason than retribution for LESTER's disability which resulted in LESTER filing complaints against Joe Ramos, BJ and other participants

8

concerning the unlawful, unsafe practices and hostile environment. Therefore, LESTER contends that such conduct is an intentional violation of Section 503 of the **ADA**, 42 U.S.C.A., Section 12203.

21). LESTER was emotionally vexed due for his fear, fright and terror proximately resulting from the above manifestations. **LESTER mused** that *"the entire Company is out to get me for reporting this complaint"*. Consequently, LESTER again reported to DEL MONTE how the above-described conduct was resulting in his sleep deprivation. LESTER stressed and worried over thoughts of whether or not he was going to lose his job in which he was employed almost forty (40) years. The work environment at DEL MONTE, based on these above-described events, became hostile and unsafe for LESTER whereas LESTER believed that DEL MONTE provided for the unlawful conduct and therefore took retribution against LESTER due for his emotional distress resulting in LESTER filing the complaints against DEL MONTE, its agents, employees and/or supervisory staff for allowing the unlawful conduct to continue.

22). Thus, in or about September 2014, LESTER complained to the Human Resource Executive Manager, IRENE, articulating an exhaustive description as for how the retaliation carried out upon him violated state and federal law. LESTER stated that

*Before California Labor Code Section 1102.5 was amended, Section 1102.5 prohibited employers from retaliating against employees who reported reasonably-believed violations of state or federal laws, rules, or regulations to a government or law enforcement agency. SB 496 extends this protection to employees who report suspected illegal behavior: (1) internally to 'a person with authority over the employee' or to*

9

*another employee with the authority to 'investigate, discover, or correct' the reported violation; or (2) externally to any 'public body conducting an investigation, hearing, or inquiry.' Additionally, SB 496 declares unlawful any employer's rule, regulation, or policy that prevents the disclosure of reasonably-believed violations of local (in addition to state and federal) laws, rules, or regulations.*

*...*

*The bill also imposes liability where any person acting on the employer's behalf retaliates against an employee who engages in protected whistleblowing activity. In addition, employers and persons acting on their behalf may not retaliate against an employee for disclosing such information or because the employer believes the employee has disclosed or may disclose the information externally or internally. SB 496 further provides that the protection of whistleblowers applies regardless of whether disclosing such information is part of the employee's job duties.*

23). On August 25, 2014, IRENE made a factual finding that general policies of DEL MONTE were violated by supervisory and/or other Company officials. However, IRENE failed and refused to take any remedial action. IRENE ratified, acquiesced, tacitly authorized, and apparently consented to the acts and omissions of BJ, Joe Ramos, and all other participants in the unlawful and unsafe practices as above-described in violation of Section 503 of the **ADA**.

24). IRENE ratified, acquiesced, tacitly authorized, and apparently consented to the acts and omissions of BJ, Joe Ramos, and all other participants in the unlawful, unsafe practices and hostile environment despite being provided actual photographs of supervisory officials tacitly authorizing and encouraging the unsafe and unlawful practices which were taking place in and

10

around LESTER's Forklift. Indeed, IRENE was provided prima facie evidence which demonstrated that such unsafe and unlawful conduct was increasing LESTER's work load, causing him emotional distress and created a safety hazard for him and other employees working in the area. However, IRENE willfully and maliciously failed and refused to take remedial action and no reason was given for the decision.

25). Moreover, after IRENE's decision, BJ, in a very hostile and aggressive manner, approached LESTER and stated to LESTER that **"IRENE don't run shit!"** BJ went on to berate LESTER. BJ made it clear that no matter the emotional distress the hostile, unsafe and unlawful environment was causing LESTER, for LESTER to file a complaint with DEL MONTE over the matter was futile because, as BJ put it, BJ ran the "Shipping Department". Indeed, LESTER filed the complaint because the unsafe conditions caused him emotional distress. Hence, LESTER was subjected to a hostile work environment and discriminated against as a result of his disability. LESTER's mind was caught in a world-wind of fear, uncertainty, fright, and terror.

26). On September 26, 2014, LESTER was rushed to the Emergency Room at Kaweah Delta District Hospital in Visalia, California. He was diagnosed with anxiety as well as an abnormally high blood pressure which all was deemed work-related injuries. The actions taken against LESTER at DEL MONTE caused LESTER to suffer psychological and physiological injuries from which LESTER has never recovered.

27). Subsequently, LESTER filed a workman's compensation claim. And after numerous depositions, at a deposition hearing

11

prior to March 16, 2016, DEL MONTE, through IRENE and its Counsel stated to LESTER that because the Qualified Medical Examiner, Dr. S. Kesselman, PHD, stipulated that LESTER's work restriction precludes LESTER working in the direct line of supervision under BJ, if LESTER does not agree to remove the work restriction precluding BJ from being LESTER's direct supervisor, DEL MONTE's only other offer to LESTER for a reasonable accommodation respecting LESTER's qualified disability would be for LESTER to agree to work in the Labor Room. BJ is to keep his current position and LESTER is to lose his current position. LESTER took the offer for what it was; LESTER had to agree to be demeaned and accept a **demotion** in order to return to work. Thus, IRENE, again on March 16, 2016, ratified, acquiesced, tacitly authorized, and apparently consented to the acts and omissions of BJ, Joe Ramos, and all other participants in the unlawful and unsafe practices.

28). In light of his minimal options, LESTER was left to consider whether or not to accept being demeaned and demoted in order to receive what DEL MONTE was proffering as a reasonable accommodation. Yet, DEL MONTE knew that it could not honor said offer because to do so would be a willful and intentional violation of the Collective Bargaining Agreement entered into between DEL MONTE and TEAMSTERS LOCAL UNION NO. 948 which was and is effective from July 1, 2015 through and until June 30, 2018 (hereinafter the "Contract"). Therefore, DEL MONTE did **not** make the offer in good faith.

29). LESTER is a Union Member of the Teamsters and therefore privy to and bound by the Contract. Thus, the Labor Room would be

12

considered a Bracket III Wage Earning position. LESTER is a Bracket IIAA (LIFT). In sum, a Bracket III, according to the Contract, is subject to the following wage earner scale: 7/1/2015 and from then on, this wage earner is to be paid an hourly wage of $18.59; on 7/1/2016 and from then on, this wage earner is to be paid an hourly wage of $18.89; on 7/1/2017 through and until June 30, 2018, this wage earner is to be paid an hourly wage of $19.19. This is per the Contract.

30). Bracket IIAA(LIFT), according to the Contract, is subject to the following wage earner scale: 7/1/2015 and from then on, this wage earner is to be paid an hourly wage of $21.28; on 7/1/2016 and from then on, this wage earner is to be paid an hourly wage of $21.68; on 7/1/2017 through and until June 30, 2018, this wage earner is to be paid an hourly wage of $22.18. This is per the Contract. In addition, per this "Bracket" system, demotion to a Bracket III may also result in mandatory loss of Seniority.

31). The Contract is binding upon LESTER and DEL MONTE. Therefore, although LESTER summarized that he and DEL MONTE would have to violate the Contract in order to provide for the demeaning demotion, out of necessity to earn an income to feed his family and pay his monthly bills, LESTER considered accepting the offer but soon was advised against it due for its illegality.

32). In addition, the Labor Room's noise decimal level is exponentially louder than in the Shipping Department. Moreover, the Labor Room is burdened with more traffic than in the Shipping Department. LESTER having worked within the Labor Room before, knew that the excessive noise and traffic would increase his

13

anxiety and panic attacks. The thought alone resulted in LESTER's anxiety and fear. In sum, to offer LESTER a job in the Labor Room is not a reasonable accommodation for LESTER.

33). Also, accepting the Labor Room assignment is demeaning. LESTER worked at DEL MONTE for almost forty (40) years. Culturally, in the work context, LESTER would be looked at by his "peers" as "having done something wrong" by being assigned to the Labor Room position. Not only would LESTER's reputation as a good worker and mental well-being be adversely impacted, such action, LESTER feared, may also signal to others that "if an employee files a complaint against DEL MONTE, DEL MONTE would implement all forms of retribution against that employee". LESTER did not want to signal such a message to his Teamster brother and sisters. The thought distressed him.

34). Furthermore, *magic fingers* was known to be allowed into the Labor Room. That being the case, LESTER would then be forced to work in a demeaning, noisier and more crowded room within a confined space, working in the exact-same unsafe, hostile work environment. Clearly, the unlawful, unsafe and willful conduct above-described is pervasive and ubiquitous throughout DEL MONTE which constitutes an intentional violation of Section 503 of the **ADA**, 42 U.S.C.A., Section 12203.

## COUNT ONE-VIOLATION OF ADA, TITLE I

35). Paragraphs 1 through 34 are incorporated herein by reference as if fully pleaded in this First Count ("COUNT ONE").

14

36). LESTER suffers from a mental impairment that limits him in the major life activity of working. Accordingly, LESTER is disabled within the meaning of the **ADA**.

37). LESTER could have performed his job, for which he was qualified, with reasonable accommodation from DEFENDANTS, but that accommodation was unlawfully denied to him.

38). LESTER's disability was caused by the wrongful acts and omissions of DEFENDANTS, and as a consequence LESTER was subjected to a hostile work environment as a result of his disability.

39). LESTER informed DEFENDANTS of the hostile work environment and its effect on him and asked that DEFENDANTS take steps to remedy those problems, yet DEFENDANTS refused to do so.

40). The acts alleged above, including DEFENDANTS willful failure to accommodate LESTER's reasonable accommodation requests for accommodation, and willful failure to remedy the hostile work environment, constitute unlawful employment practices in violation of **ADA** Section 102(a), 102(b)(1) and 102(b)(5)(A) and (B), 42 U.S.C.A., Section 12112(a), (b)(1) and (b)(5)(A) and (B). All conduct alleged above occurred during a legally cognizable time period at DEFENDANTS facility.

**COUNT TWO-RETALIATION IN VIOLATION OF ADA**

41). Paragraphs 1 through 40 of this complaint are incorporated herein by reference as if fully pleaded in the Second Count ("COUNT TWO").

42). DEFENDANTS have intentionally violated Section 503 of the **ADA**, 42 U.S.C.A., Section 12203.

15

43). BJ threatened to discipline LESTER for complaining that the unsafe and hostile work environment caused him emotional distress.

44). BJ threatened to discipline LESTER for requesting a reasonable accommodation for his disability.

45). BJ threatened to discipline LESTER for complaining about supervisory staff's racial hostility and contempt for LESTER filing a racial discrimination, disparate-treatment claim against DEFENDANTS pursuant to Title VII of the Civil Rights Act of 1964.

46). On behalf of DEL MONTE, IRENE ratified, acquiesced, tacitly authorized, and apparently consented to the acts and omissions of BJ, Joe Ramos, and all other participants in the unlawful, unsafe practices. IRENE was provided prima facie evidence which demonstrated that such unsafe and unlawful conduct was increasing LESTER's work load, caused him emotional distress and created a safety hazard for him and other employees working in the area. However, IRENE willfully and maliciously failed and refused to take remedial action and no reason was given for the decision.

47). DEFENDANTS retaliating against LESTER for exercising protected activity on the basis of his disability has caused, continues to cause, and will cause LESTER to suffer substantial damages for future pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

48). DEFENDANTS have acted maliciously and with reckless disregard of LESTER's federally protected rights by retaliating against LESTER, thereby entitling LESTER to punitive damages.

16

## COUNT THREE-DISABILITY HARASSMENT IN VIOLATION OF
## TITLE I OF THE ADA

49). Paragraphs 1 through 48 of this complaint are incorporated herein by reference as if fully pleaded in the Third Count ("COUNT THREE").

50). LESTER was subjected to unwelcome harassment as a result of his disability.

51). The harassment was sufficiently severe or pervasive to cause LESTER to suffer a mental injury.

52). DEFENDANTS were provided prima facie evidence which demonstrated that the harassing conduct caused LESTER injury. DEFENDANTS knew of the harassing conducts effects on LESTER. However, DEFENDANTS willfully and maliciously failed and refused to take remedial action and no reason was given for the decision.

## COUNT FOUR-INTENTIONAL DISCRIMINATION AND HARASSMENT ON THE
## BASIS OF RACE IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

53). Paragraphs 1 through 52 of this complaint are incorporated herein by reference as if fully pleaded in the Third Count ("COUNT FOUR").

54). As a result of filing the **ADA** complaint, on August 10, 2014, BJ summoned LESTER to his office. When LESTER entered BJ's office, BJ, with the expression of antagonism and hostility in his voice, spewed to LESTER that an employee named Ed Miller filed a complaint with BJ against LESTER. Thus, after back and forth dialogue, BJ stated to LESTER that *regarding your complaint against me, if magic fingers was in here I would get a massage from him right now!* BJ then stated to LESTER that LESTER is being "written-up". BJ went on to

17

direct LESTER to "get out of [his] office". Hence, based on BJ's verbalizations and dialogue to LESTER that day and his statement that *"regarding your complaint against me, if magic fingers was in here I would get a massage from him right now!"* Coupled with the fact that BJ went as far as threatening to fabricate a false adverse-complaint against LESTER, LESTER clearly believed the interaction between him and BJ was in furtherance of BJ's disparate-treatment of LESTER and BJ's attempt to protect Joe Ramos, for no other reason than retribution for LESTER's disability which resulted in LESTER filing complaints against Joe Ramos, BJ and other participants concerning the unlawful, unsafe practices and hostile environment.

55). DEFENDANTS intentionally discriminated against and harassed LESTER based on race as a consequence of LESTER exercising protected activity as a result of his disability.

56). DEFENDANTS were provided prima facie evidence which demonstrated that the intentional conduct caused LESTER injury. Thus, DEFENDANTS knew of the conducts effects on LESTER. However, DEFENDANTS willfully and maliciously failed and refused to take remedial action and no reason was given for the decision.

**COUNT FIVE-DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE I AND V OF THE ADA, AND THE CIVIL RIGHTS ACT OF 1964**

57). Paragraphs 1 through 56 of this complaint are incorporated herein by reference as if fully pleaded in the Third Count ("COUNT FIVE").

58). As a result of filing the **ADA** complaint, on August 10, 2014, BJ summoned LESTER to his office. When LESTER entered BJ's

18

office, BJ, with the expression of antagonism and hostility in his voice, spewed to LESTER that an employee named Ed Miller filed a complaint with BJ against LESTER. Thus, after back and forth dialogue, BJ stated to LESTER that *regarding your complaint against me, if magic fingers was in here I would get a massage from him right now!"* BJ then stated to LESTER that LESTER is being "written-up". BJ went on to direct LESTER to "get out of [his] office". Hence, based on BJ's verbalizations and dialogue to LESTER that day and his statement that *"regarding your complaint against me, if magic fingers was in here I would get a massage from him right now!"* Coupled with the fact that BJ went as far as threatening to fabricate a false adverse-complaint against LESTER, LESTER clearly believed the interaction between him and BJ was in furtherance of BJ's disparate-treatment of LESTER and BJ's attempt to protect Joe Ramos, for no other reason than retribution for LESTER's disability which resulted in LESTER filing complaints against Joe Ramos, BJ and other participants concerning the unlawful, unsafe practices and hostile environment.

59). DEFENDANTS discriminated against and harassed LESTER based on race as a consequence of LESTER exercising protected activity as a result of his disability.

60). DEFENDANTS were provided prima facie evidence which demonstrated that the discriminatory, harassing conduct caused LESTER injury. DEFENDANTS knew of the effects of the discrimination on LESTER. However, DEFENDANTS willfully and maliciously failed and refused to take remedial action and no reason was given for the decision.

19

**COUNT SIX-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

61). Paragraphs 1 through 60 of this complaint are incorporated herein by reference as if fully pleaded in the Third Count ("COUNT SIX").

62). DEFENDANTS' conduct alleged above was extreme and outrageous, and went beyond all possible bounds of decency.

63). DEFENDANTS' conduct alleged above was intentional or reckless.

64). As a result of DEFENDANTS' conduct alleged above, LESTER suffered extreme emotional distress and mental anguish.

**PRAYER FOR RELIEF**

**WHEREFORE**, LESTER respectfully request that this Court grant him,

1. **JURY TRIAL** on all issue triable;

2. **Compensatory and Punitive Damages** pursuant to Title VII, 42 U.S.C.A., Section 1981a(b)(3), **as maximally capped per employers with 501 or more employees;**

3. **Back Pay** pursuant to 42 U.S.C., Section 12117; 42 U.S.C, 2000e-5(g)(1);

4. **Front Pay** for the future effects of discrimination *See* Pollard v. E. I. du Pont de Nemours & Co., *532 U. S. 843, 850* (2001); Salitros v. Chrysler Corp., *306 F. 3d 562, 573* (8th Cir. 2002) (finding front pay appropriate when a reinstatement of the plaintiff was illusory because he was unable to return to work as a result of the employer's harassment);

20

5. **Compensatory and Punitive Damages** pursuant to Title VII, 42 U.S.C.A., Section 1981a(b), **as maximally capped per employers with 501 or more employees;**

6. **Compensatory and Punitive Damages** pursuant to Title VII, 42 U.S.C.A., Section 1981a(b)(3), **as maximally capped per employers with 501 or more employees;**

7. All other economic damages in the form of medical insurance premiums and other pecuniary losses, together with interest as permitted by law; (2) compensatory damages for mental pain and anguish in amounts to be proven at trial; (3) the amount of any lost or diminished Social Security benefits; (4) attorney's fees and costs of this action; (5) punitive damages in amounts to be proven at trial; (6) other affirmative relief to eradicate the effect of DEFENDANTS' unlawful employment practices; and,

8. Such other and further relief as this Court deems necessary and proper.

_Lester L. Holley, Sr._                    08-04-16

LESTER L. HOLLEY, SR.                    DATE

**PRO SE LITIGANT**

21

**VERIFICATION**

I, LESTER L. HOLLEY, SR., have read the above complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

Executed on August 4, 2016, at Tulare, California 93274, in the County of Tulare, California.

I, LESTER L. HOLLEY, SR., certify under penalty of perjury that the foregone is true and correct.

_____
SIGNATURE OF LESTER L. HOLLEY, SR.

22